## Dubois's Appeal.

*Lien of Attorney for Professional Services.——Power of one Partner to Bind his Copartners by Writing under Seal.— What Assignments must be recorded under the Act of 1818.*

1. Although it is said that an attorney has a lien for his fees upon the money or papers of his client while they are in his hands, and may deduct therefrom a just compensation for his services, this is a right to defalcate rather than a lien; for the exercise of which, possession is indispensable.

2. But he had no lien on money brought into court for distribution, even though it belong to his own client. Having none on record, and not being the owner in any sense of the lien which he was instrumental in procuring, he cannot claim as distributee.

3. Where a mortgage was taken by the members of a firm to secure the payment of a firm debt, it was *Held*, that an assignment by one of the partners, in the name of the firm, of "all debts due to the firm," in payment or on account of a claim held by the assignee against the firm, carried with it the mortgage, which was only a security for one of the "debts due"; that as a seal was not essential to the contract, the addition of a seal did not viti-ate it, and that it was not invalid, because not recorded within thirty days, under the Act of March 24th 1818.

APPEAL from the Common Pleas of *Bucks county*.

This was an appeal by John L. Dubois, for himself and as administrator of Samuel M. Dubois, deceased, from the decree of the court below, distributing the proceeds of the sale of the real estate of Harper Hellerman and Sarah Ann Hellerman his wife, which was sold on a judgment obtained on a mortgage at the suit of Joseph Beans, assignee of Edward Rohrer. The facts of the case were these:

The appellant, as attorney at law on behalf of S. M. Dubois (who was also an attorney), brought suit for Amos Fetherolf, Alexander Montgomery, and John Zulich, trading as Fetherolf, Montgomery & Co., against Harper Hellerman, to April Term 1856, No. 38, and on the 5th of May 1856, recovered judgment for $195.06. Under this judgment a *fi. fa.* was issued, and the interest of Hellerman in a tract of land owned by his wife was levied on and condemned. On the 6th of October 1856, Heller-man and wife executed a mortgage on this land, payable April 1st 1857, in favour of Amos Fetherolf, Alexander Montgomery, and John Zulich, to secure the payment of the above-mentioned judgment, then worth, with interest and costs, the sum of $219.28.

[Dubois's Appeal.]

On the 7th of September, 1857, Alexander Montgomery, one of the firm of Fetherolf, Montgomery & Co., who were indebted to Isaac Barton, of Philadelphia, in the sum of $4963.92, executed and delivered to him the following paper:

"For value received, we do hereby assign, transfer, and set over unto Isaac Barton, of the city of Philadelphia, 'Grocer,' all debts, dues, claims and demands whatsoever, now due, and payable to us, or hereafter to become due, and payable to us by any and all person or persons whomsoever, to have and to hold the same to and for his own proper use and behoof, and to take, receive, and collect the same, and apply the proceeds thereof to the payment of a certain debt of $4963.92, due and owing by us to him. And if any surplus should remain after the payment of the said debt due to him, or if any balance of the said debt not paid from any other source, then to hold and pay the said surplus to us. In witness whereof we have hereunto set our hands and seals, this 7th day of September 1857.

(Signed)          FETHEROLF, MONTGOMERY & Co." [SEAL.]

Notice of this assignment was given to Harper Hellerman and wife, 1857; but it has not been recorded.

On the 6th of January 1859, Amos Fetherolf and John Zulich assigned all their interest in the mortgage to Daniel Fetherolf, for the consideration of $125, and delivered the mortgage to him, who on the same day transferred the interest thus acquired to Samuel M. Dubois.

The amount in court for distribution, after satisfying the mortgage under which the property was sold, was $262.51. Mr. Dubois, the appellant, claimed for his own use the sum of $50, for professional services rendered in the proceedings, which resulted in the giving of the mortgage to secure the original debt for Fetherolf, Montgomery & Co. Two-thirds of the fund in court was claimed by him as administrator of Samuel M. Dubois, by virtue of the assignment to him by Daniel Fetherolf, who was the assignee of Amos Fetherolf and John Zulich, two of the firm of Fetherolf, Montgomery & Co., as above stated. And the whole of it was claimed by Isaac Barton, by virtue of the previous assignment of the whole mortgage to him by Alexander Montgomery, one of the members of said firm. The court below (SMYSER, J.) refused to allow the claim of the appellant for professional services, rejected his claim as administrator of S. M. Dubois, and distributed the whole fund in court to Isaac Barton.

From which decree Mr. Dubois appealed to this court, assigning it for error here.

*C. E. & J. L. Dubois*, in support of the claim for professional services, cited and relied on Kelly's Appeal, 4 Harris 59; Bals-

baugh *v.* Frazer, 7 Harris 95 ; Shapley *v.* Bellows, 4 N. H. Rep.
347 ; Martin *v.* Hawks, 15 Johns. R. 405 ; Barker *v.* Cook, 11
Mass. R. 236 ; Dunkler *v.* Locke, 13 Id. 525.

As to the claim for the estate of Samuel M. Dubois, they con-
tended, 1. That the transfer by Montgomery to Barton in the
partnership name, being under seal, was void ; the assent of the
other partners being negatived by their assignment to Fetherolf ;
citing Johns *v.* Batten, 6 Casey 84 ; Bond *v.* Aitkin, 6 W. & S.
165 ; Fitchthorne *v.* Boyer, 5 Watts 159 ; Boller *v.* Colfelt, 2
Casey 462 ; Snyder *v.* May, 7 Harris 240 ; Overton *v.* Tozer,
7 Watts 331 ; Dechert *v.* Filbert, 3 W. & S. 454 ; Cash *v.* Tozer,
1 Id. 525 ; Bitzer *v.* Shank, 1 Id. 340 ; Packer *v.* Smith, 4 Id.
290.  2. That, as the mortgage was given to them, not as part-
ners, but as tenants in common, neither could assign more than
his undivided interest therein : Bissel on Partnership 49 (note) ;
McDermott *v.* Lawrence, 7 S. & R. 440 ; Coder *v.* Huling, 3
Casey 84 ; Lancaster Bank *v.* Myley, 1 Harris 550 ; Fluck *v.*
Replogle, Id. 406.  The cases of Craft *v.* Webster, 4 Rawle 214,
and Mott *v.* Clarke, 9 Barr 406, which recognise a parol trans-
fer of a mortgage, are doubted in Philips *v.* Bank of Lewistown,
6 Harris 401 ; Fisterer *v.* Knox, 1 Id. 622.  See also, Act of
April 6th 1856, Brightly's Purdon 1171, § 6.

There is no distinction between a deed and a mortgage :
McDermott *v.* Lawrence, 7 S. & R. 442 ; Goodwin *v.* Richard-
son, 11 Mass. R. 469.  The transfer was not recorded within
thirty days, as required by Act of 1818 : Watson *v.* Bagley, 2
Jones 167 ; Reigart's Appeal, 4 Barr 479 ; Lucas *v.* S. R. R.
Co., 8 Casey 458 ; Driesbach *v.* Becker, 10 Id. 153.  The case
of Chaffees *v.* Risk, 12 Harris 433, gave construction to the Act
of 1818, which was confined to assignments for *all* creditors ;
but the Act of 1836, under which all assignments are made, ex-
tends to creditors *or some of them,* and to all the estate of the
assignor, *or any part thereof.*  In this case the transfer is of
" all debts, dues, claims and demands," to pay a certain debt
due to the assignee, and the balance to the assignor.

*George Lear,* for appellee.—1. Mr. Dubois had no lien on the
money in court, though an attorney may have such a lien on
money in his hands for his fees : Balsbaugh *v.* Frazer, 7 Harris
95 ; Irwin *v.* Workman, 3 Watts 357.

2. The transfer to Barton was of " all debts, dues, claims and
demands whatsoever."  The mortgage was received in the course
of business to *secure* one of these claims, and was not a convey-
ance of real estate : Simpson *v.* Ammons, 1 Binn. 175 ; Wentz
*v.* De Haven, 1 S. & R. 311 ; Commonwealth *v.* Wilson, 10 Casey
63.  One partner has power to transfer such a debt in the name
of the firm, each partner being the agent of the firm : 3 Kent

44; and he may do so under seal: 3 Id. 38; as well for antece-· dent as for future debts of the firm : Story on Part. 101.   See also Harrison *v.* Sterry *et al.*, 5 Cranch 289 ; 2 Condensed Rep. 263 ; Lamb *v.* Durant, 12 Mass. 54 ; Ball *v.* Dunsterville, 4 T. R. 313 ; McBride *v.* Hagen, 1 Wend. 334 ; Deckart *v.* Case, 5 Watts 22 ; Hennessy *v.* Western Bank, 6 W. & S. 310 ; McCul- lough *v.* Summerville, 8 Leigh (Va.) Rep. 415.   The cases cited by the other side on this point, only show that one partner cannot bind his copartners under seal in executory contracts such as seek to *charge* the firm and make the partners individually liable.

The effect of a seal in a case like this was decided in Price *v.* Alexander, 2 Greene (Iowa) Rep. 427 ; Quiver *v.* Marblehead Ins. Co., 10 Mass. 476 ; Everett *v.* Strong, 5 Hill 163 ; Collyer on Part., §467 ; Hennessy *v.* Western Bank, 6 W. & S. 310. Nor was it necessary to make this transfer in writing : Craft *v.* Webster, 4 Rawle 256 ; Mott *v.* Clark, 9 Barr 402 ; Wents *v.* De Haven, 1 S. & R. 317.

The recording of assignments is only required when they are *in trust*, and was not necessary here : Chaffees *v.* Risk, 12 Har- ris 434 ; Rahn *v.* McElrath, 6 Watts 155.   Even where record- ing is necessary and has been neglected, such transfers are only void as to creditors.

The opinion of the court was delivered, February 21st 1861, by STRONG, J.—An attorney, in behalf of a firm consisting of three partners, brought suit and recovered a judgment against their debtor.   An execution was then issued and levied upon the debtor's interest in a tract of land belonging to his wife.   The husband and wife then joined in executing a mortgage upon her land to the three members of the firm, to secure the payment of the judgment which had been recovered against the husband. Subsequently the land was sold under judicial process, at the suit of another mortgagee of the husband and wife, and the proceeds of the sale were brought into court for distribution. They suffice to satisfy the mortgage given to the members of the firm, and the present controversy is between rival claimants to the fund applicable to its payment.   It is insisted, on behalf of the attorney, that he is entitled to take out a reasonable com- pensation for the professional services rendered by him in obtaining the judgment for the firm, and for issuing execution thereon.   In other words, it is claimed that he has a lien on the fund in court, though it was not brought there through his agency, and though it was never in his hands.

In a certain sense, an attorney has been said to have a lien for his fees, upon the money or papers of his client, while they are in his hands.   He may deduct from money collected by him, a just compensation for collecting it, and need only pay over the

balance.  This, however, is a right to defalcate, rather than lien.  So he may retain papers intrusted to him, until he has been paid for services rendered in regard to them.  But possession is indispensable to his lien as much as it is to the lien of an ordinary factor or bailee.  It has never been determined that he can maintain a claim upon a fund in court, against a mortgagee or a judgment-creditor, even though such mortgagee or creditor be his own client.  In distributing money in court, the Common Pleas is guided by the liens of record.  True, if there be a question respecting the ownership of a record lien, the court may decide it; but lien is not ownership.  The attorney has no title to the judgment which he secures, or to the mortgage which he is instrumental in obtaining.  Not being an owner, he cannot claim as a distributee.  We concur, therefore, in opinion with the learned president of the Common Pleas, that the attorney, as such, was not entitled to share in the distribution made in this case.  The next question is, whether the court erred in not decreeing to the appellant, as administrator of an assignee of two of the copartners of the firm of Fetherolf, Montgomery & Co., two-thirds of the sum secured by the mortgage, instead of awarding the whole to Isaac Barton, a prior assignee under an assignment made by the third partner in the name of the firm, and made to discharge a partnership debt.  The facts are that the firm was largely indebted to Isaac Barton, after the judgment against Hellerman had been recovered, and after the mortgage of Hellerman and wife had been given to secure it. On the 7th of September 1857, Montgomery, one of the partners, by an instrument signed Fetherolf, Montgomery & Co., and sealed, assigned to Barton " all debts, dues, claims, and demands whatsoever" due to the firm, authorizing the assignee to collect them, and apply the sums collected to the payment of the debt due from the firm to him.  The assignment also stipulated that if any surplus remained, after payment of the said debt, it should be paid to the firm.  Sixteen months afterwards, on the 6th of January 1859, the other two partners assigned their interest in the mortgage to Daniel Fetherolf, under whom the appellant claims.  The contest is between the assignees under these two assignments.  The appellant, who claims under the second, insists that the prior transfer to Isaac Barton was inoperative to pass the mortgage, or, at all events, more than the interest of Montgomery therein, because it was only an assignment of the debts due to the firm, and he contends that the mortgage was the property of the partners as tenants in common, and not the property of the firm.  This allegation is founded upon an entire misapprehension of the character of the mortgage, and of the purpose for which it was made.  It was indeed given to the three partners, and not the firm in its dis-

tinctive name. But it was given to secure the payment of a judgment belonging to the firm. That judgment was the substance of which the mortgage was only the shadow. Payment of the debt to the firm, would have extinguished the mortgage, of course. An assignment of all debts due to the firm undeniably carried the judgment to the assignee, and with it, by necessary consequence, all securities for its payment. This is none the less true because the securities may have stood in other names than those of the plaintiffs in the judgments. In whatever name the mortgage stood, it was but collateral to the judgment, and dependent upon it for continued existence.

Again, it is insisted that the assignment to Isaac Barton was invalid, because Montgomery appended a seal to the name of the firm. The objection does not call in question the power of one partner to assign partnership credits in payment of debts due from the firm, but it denies that he can do it in the mode here adopted by a sealed instrument. It is doubtless a general principle of the common law, that a partner cannot bind his copartners by seal, but this is to be taken with some qualification. The partnership relation will not authorize one partner to execute an instrument under seal, whereby a new and original obligation is imposed upon the firm. He cannot charge the firm by seal, but he may discharge it, and it seems now to be generally settled that when a seal is not essential to the nature of a contract, and will not change its legal effect, the addition of a seal will not vitiate it. The cases upon this subject are collected in Vol. I, Am. Lead. Cas. 297–8, and we shall not go over them. The rule protects a partnership rather against executory than executed contracts. The assignment of a chose in action, in payment of a debt, does not charge but discharge. It is not an executory contract, creating an obligation. Its legal effect is not changed by adding a seal to it. Montgomery's assignment to Barton was not, therefore, vitiated by the form in which it was made. In Everett *v.* Strong, 5 Hill 163, the precise question here made was ruled, and it was held that an assignment of a chose in action by one partner under seal, was a good assignment. We are of the same opinion.

Finally, it is insisted that the assignment to Barton was void, because it was not recorded within thirty days, in accordance with the requirement of the Act of 24th March 1818. That Act is wholly inapplicable to this case, for two reasons: first, because no trust in favour of creditors was created by the instrument, and secondly, because no creditor of the firm contests it. The strife is between two assignees of the mortgage.

Upon the whole, we discover nothing to invalidate the claim of the appellee to the money in court, and we affirm the decree of the court below.

The decree of distribution is affirmed.